

FILED
ASHEVILLE, N. C.
OCT 5 2005
U.S. DISTRICT COURT
W. DIST. OF N. C.

1:05mc220

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

| | |
|---|---|
| IN RE: REAL PROPERTY LOCATED AT )<br>STREET ADDRESS 59 POPLAR DRIVE )<br>MARION, MCDOWELL COUNTY, )<br>NORTH CAROLINA, PARCEL )<br>IDENTIFICATION NUMBER 0781.02-89- )<br>5990, BEING 1.279 ACRES, MORE OR )<br>LESS, AND MORE PARTICULARLY )<br>DESCRIBED IN A DEED RECORDED AT )<br>BOOK 824, PAGE 763, IN THE )<br>MCDOWELL COUNTY, NORTH<br>CAROLINA, LAND REGISTRY | **ORDER<br>AND LIS PENDENS** |

FILE IN GRANTOR INDEX UNDER:

____ROBERT LEE ALLISON_____
____ROBERT ALLISON_____
____LESLIE RENAE HOLLIFIELD_____
____LESLIE R.HOLLIFIELD_____
_LESLIE RENAE HOLLIFIELD ALLISON_

WHEREAS, the United States of America, by and through Ricky T. Buchanan, detective, McDowell County, North Carolina, Sheriff's Office, has presented an affidavit to the Court alleging that the above-captioned property facilitated the distribution and dispensing of controlled substances in violation of 21 U.S.C. § 801 *et seq.*; and,

WHEREAS, the Court, having reviewed the affidavit, finds that there is probable cause to believe that the property facilitated the distribution and dispensing of controlled substances in violation of 21 U.S.C. §801 *et seq.*; and,

WHEREAS, upon this finding of probable cause, the property may be subject to civil or criminal forfeiture to the United States pursuant to 21 U.S.C. §§ 881 and 853, and the government is entitled to record a *lis pendens* to give public notice of the government's forfeiture interest and potential civil and/or criminal forfeiture claim against the property; and,

THEREFORE, the United States is directed forthwith to file this Order and Lis Pendens with the appropriate state or local public depository to prevent the flight or transfer of the property so that the United States may initiate action to adjudicate forfeiture of the property; and,

ALL WHO READ THIS ORDER AND LIS PENDENS TAKE NOTICE that the property is subject to forfeiture to the United States in a present or future criminal or civil *in rem* action before this Court, and any person who has a question as to this action should contact:

United States Attorney for the Western District of North Carolina
Attn: Thomas R. Ascik, Assistant United States Attorney
100 Otis Street
Asheville, North Carolina
(828) 271-4661

This the 5th day of October, 2005.

DENNIS L. HOWELL
UNITED STATES MAGISTRATE JUDGE

**TO THE RECORDER OF THIS INSTRUMENT: MAIL ANY AND ALL RECORDED COPIES TO THE UNITED STATES ATTORNEY FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT THE ABOVE ADDRESS.**

1:05mc 220

FILED
ASHEVILLE, N.C.
OCT - 5 2005
U.S. DISTRICT COURT
W. DIST. OF N.C.

# AFFIDAVIT OF MCDOWELL COUNTY SHERIFF'S OFFICE DETECTIVE RICKY BUCHANAN

Affidavit in support of a *lis pendens* to be placed on the residence/property of Robert Lee Allison, and Leslie Renae Hollifield Allison, husband and wife, which is located at 59 Poplar Drive in Marion, McDowell County, North Carolina.

Affiant, Ricky T. Buchanan, being duly sworn, deposes and says:

I am employed as a Detective with the McDowell County Sheriff's Office and have been so employed since January 1996. I attended Basic Law Enforcement Training at Mayland Community College in Spruce Pine, North Carolina, and completed in February of 1997. Since that time, I have worked in the jail facility as a detention officer and with the patrol division as a patrol officer until October of 2000, when I was assigned to the Drug Enforcement division as a Drug Detective. I have attended several training seminars dealing specifically with the enforcement of the North Carolina Controlled Substance Act. These seminars included courses conducted by the North Carolina Department of Justice and United States Department of Justice. I have also attended a two-week basic narcotic investigators course conducted by the Drug Enforcement Administration in January 2001, and an advanced narcotic investigators course conducted by the Drug Enforcement Administration in August 2001. During my tenure with the McDowell County Sheriff's Office Drug Enforcement, I have been responsible for investigating violations of the North Carolina Controlled Substance Act. During this

1

time I have conducted countless investigations involving such violations. I have conducted surveillance, executed search warrants, arrested suspects, gathered evidence, handled and controlled informants, and assisted in the preparation of cases for trial in both state and federal court. I have debriefed informants and defendants, and have consulted with other agents and prosecuting attorneys. As a result I have gained considerable experience. The following affidavit provides information that is based on either my personal knowledge or information relayed to me by other law enforcement officers. It does not necessarily contain everything that I know about the matters described herein. For simplicity and confidentiality reasons, all cooperating individuals are referred to in the male gender. Based upon my training, experience and participation in drug offense investigations and investigations into the financial implications that result from violations of drug laws, I know:

   a.   that drug traffickers very often place assests in names other than their own to avoid detection of these assests by government agencies;

   b.   that even though these assets are in other persons' names, the drug dealers continue to use these assests and exercise dominion and control over them;

   c.   that large-scale drug traffickers maintain on hand large amounts of U.S. Currency in order to maintain and finance their ongoing drug business;

   d.   that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the importation, ordering, sale, purchase and distribution of controlled substances. That the aforementioned books,

records, receipts, notes, ledgers, etc., are maintained where the drug traffickers have ready access to them as in their houses and places of business;

e. that it is common for large-scale drug traffickers to secrete contraband, proceeds of drug sales, to include jewelry and precious metals, and records of drug transactions in secure locations for ready access and to conceal theses items from law enforcement authorities;

f. that persons involved in drug trafficking very often conceal in secure locations, with ease of access, caches of drugs, large amounts of currency, currency counting machines, financial instruments, and proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in drug trafficking activities;

g. that when drug traffickers amass large proceeds from the sale of drugs, they then attempt to legitimize these profits. That to accomplish these goals, they utilize (including, but not limited to) foreign and domestic banks and their attendant services, such as securities, cashiers' checks, money drafts, wire transfers, and real estate and brokerage houses. Drug traffickers also attempt to legitimize drug profits by concealing assests in shell corporations and business fronts. Documents relating to the concealment and legitimization of drug profits are often kept readily accessible by drug traffickers such as in their residences and places of business;

h. that it is common for drug traffickers to travel to major distribution centers and cities to sell or distribute drugs. That the methods of transportation include, but are not limited to, commercial airlines, private airplanes, rental cars, and private

automobiles; that drug traffickers often keep and maintain records reflecting such travel and travel methods;

i. that drug traffickers commonly maintain addresses and/or telephone numbers in books or papers or electronic telephone directories which reflect names, addresses and/or telephone numbers for their associates in the trafficking organization. That drug traffickers often keep billing records for residential, cellular and business telephones and keep the aforementioned books, papers, electronic directories and/or records in their places of residence or business or on their person;

j. that drug traffickers often take, or cause to be taken, photographs and/or videos of themselves, their associates, their assets (to include currency), and their drugs. That these traffickers usually keep these photographs and/or videos within their places of residence or business;

k. that drug traffickers often utilize personal computers to maintain records of drug trafficking activities and/or drug-related financial transactions and the subsequent movement of assests. That drug traffickers often utilize telephone answering machines, facsimile machines, telex communication systems, paging devices and other forms of electronic or wire communication to further their drug trafficking and drug-related financial activities;

The following paragraphs are furnished to establish probable cause in support of a *lis pendens* to be placed on the residence/property of Robert Lee Allison and Leslie Renae Hollifield Allison, which is located at 59 Poplar Drive in Marion, McDowell County, North Carolina, and described in a deed

at Book 824, Page 763, in the McDowell County Public Registry, McDowell County, North Carolina:

1). On February 06, 2004, Deputy Jason Crisp of the McDowell County Sheriff's Office conducted a vehicle stop on a white colored Chevrolet pick-up truck on Highway 70 West in Marion, McDowell County, North Carolina, which was owned and operated by Robert Lee Allison. The vehicle stop occurred about one half mile from 59 Poplar Drive, Marion. Dep. Crisp placed Robert Allison under arrest for Driving While Impaired and conducted a search of Robert Allison's vehicle incident to arrest. Dep. Crisp detected a strong odor of marijuana from inside of the vehicle and also observed a black colored nylon bag in the passenger area, which contained Twelve Thousand Nine Hundred Eight dollars and sixteen cents ($12,908.16) of U.S. Currency. Dep. Crisp also located a white colored trash bag, lying underneath a coat in the seat of the vehicle, which contained 453.60 grams of marijuana. Dep. Crisp also located a set of digital scales from inside of the aforementioned coat.

2). On February 16, 2005, a confidential source (CS-1), who had recently been arrested for felony possession of marijuana, came to the McDowell County Sheriff's Office for the purpose of being interviewed. Your Affiant and Detective Taylor (McDowell County Drug Enforcement) conducted the interview with CS-1, who gave statements against his own penal interests, regarding his knowledge and involvement in the illegal distribution of marijuana. CS-1 stated he had been purchasing marijuana from Robert Allison for approximately one year. CS-1 states he has purchased marijuana from Robert Allison at Robert Allison's residence; which CS-1 described as being a house across from Pleasant Gardens Elementary School in Marion, McDowell County, North Carolina, a total of approximately 15-20 times.

5

CS-1 states he will usually go inside Robert Allison's residence and wait in the kitchen area of the residence while Robert Allison goes outside and returns in approximately 4-5 minutes with the marijuana. CS-1 stated the marijuana he had been arrested for came from Robert Allison in a transaction on the property at 59 Poplar Drive. Your Affiant knows that the residence described by CS-1 is (and was at the time) 59 Poplar Drive, Marion.

3). On February 24, 2005, Detectives with the McDowell County Sheriff's Office conducted an undercover operation for the purpose of purchasing a quantity of marijuana from Robert Allison at 59 Poplar Drive in Marion, McDowell County, North Carolina. The purchase was made by CS-1, who was searched prior to and after the operation for contraband with negative findings, and who was equipped with a quantity of McDowell County Sheriff's Office Special Funds for the purpose of purchasing the marijuana. The purchase was made by CS-1 from Robert Allison, in the kitchen of the residence at 59 Poplar Drive. Robert Allison had gone into the master bedroom and returned carrying a green military ammunition can from which he took marijuana. CS-1 paid Robert Allison One Hundred Forty dollars ($140) and received 40.7 grams of marijuana. Leslie Renae Hollifield Allison, now the wife of Robert Allison and at the time the girlfriend of Robert Allison who lived and resided at 59 Poplar Drive, greeted CS-1 as he entered the kitchen area. She observed the marijuana transaction.

4. On May 09, 2005, Detectives with the McDowell County Drug Enforcement conducted an undercover operation for the purpose of purchasing a quantity of marijuana from Robert Allison at 59 Poplar Drive in Marion, McDowell County, North Carolina. The purchase was made by a McDowell County Sheriff's Office Confidential Source, hereafter referred to as

6

CS-2, whom has provided accurate and reliable information in the past, and has provided statements against his own penal interests. CS-2 was searched prior to and after the operation for contraband with negative results, and was equipped with a quantity of McDowell County Sheriff's Office Special Funds for the purpose of purchasing the marijuana. CS-2 met Robert Allison and Leslie Renae Hollifield Allison and two other persons, an unknown white male and a white female, in the yard at 59 Poplar Drive. CS-1 and Robert Allison went into the residence. When they returned to the yard, Robert Allison gave the unknown white male approximately a quarter ounce bag of marijuana. Robert Allison asked Leslie Renae Hollifield Allison, "did you get the money?" referring to the price of the quarter ounce bag of marijuana. She replied in the affirmative and stated that she had received $35.00. Leslie Renae Hollifield Allison then engaged in a conversation with CS-2 regarding prices for cocaine. CS-2 then paid Robert Allison One Hundred Twenty dollars ($120) and received 32.2 grams (gross) of marijuana from Robert Allison.

5. On May 16, 2005, Detectives with the McDowell County Drug Enforcement conducted an undercover operation for the purpose of purchasing a quantity of marijuana from Robert Allison at the residence at 59 Poplar Drive in Marion, McDowell County, North Carolina. The purchase was made by CS-2, with CS-2 being searched prior to and after the operation for contraband with negative findings and CS-2 was equipped with a quantity of McDowell County Sheriff's Office Special Funds to be used in purchasing the marijuana. CS-2 paid Robert Allison One Hundred Twenty dollars ($120) and received 29 grams (gross) of marijuana from Robert Allison. Robert Allison went into the residence to retrieve the marijuana for CS-2.

7

6. On May 16, 2005, Officers with the Adult Community Corrections (NC Probation/Parole) went to the residence of Robert Allison and Leslie Renae Jones Hollifield Allison, located at 59 Poplar Drive in Marion, McDowell County, North Carolina, for the purpose of searching Robert Allison's person and residence/property, as part of his conditions of his probationary sentence. Officer Pittman (NC Adult Community Corrections) obtained verbal consent from Robert Allison to search his person and residence/property, at which time Officer Pittman contacted your Affiant requesting assistance in the search. Detectives with the McDowell County Drug Enforcement, Old Fort, and Marion Police Departments arrived at the residence to assist in the search. Robert Allison stated to the probation officers that he had a small quantity of cocaine in the master bedroom. A search of the residence yielded a green colored ammunition can located in Robert Allison and Leslie Renae Hollifield Allison's bedroom, which contained 700.7 grams (gross) of marijuana, a set of silver colored digital scales and ten (10) Clonazepam 1mg pills (Schedule IV). Detectives also located Six Hundred Sixty Five dollars ($665) of United States currency underneath the top mattress of a bed in the same bedroom. Detectives also seized a small quantity of suspected cocaine and a piece of a clear plastic straw from a plate in the closet of the bedroom. Detectives searched the wooded area of the property behind the residence and located a green colored ammunition can, which contained 362.1 grams (gross) of marijuana and eighteen (18) cups containing soil, with six (6) of the cups containing small marijuana plants, which cups were located off the property and next to the property line.

7. At all times and events described in this affidavit, Robert Lee Allison and Leslie Renae Hollifield Allison resided together at 59 Poplar Drive, Marion, North Carolina.

8. At all times and events described in this affidavit, Robert Lee Allison and Leslie Renae Hollifield Allison were not married.

9. Robert Lee Allison and Leslie Renae Hollifield Allison were married on September 16, 2005.

10. At all times and events described in this affidavit, Robert Lee Allison was the sole owner of the property and residence at 59 Poplar Drive, Marion, North Carolina.

11. In a general warranty deed recorded at Book 824, Page 763 in the McDowell County Public Registry on May 24, 2005, "Robert Lee Allison, single" conveyed the property and residence at 59 Poplar Drive to "Robert Lee Allison, single" and "Leslie Renae Hollifield, single."

Based on these facts, I submit that probable cause exists to believe that the property has been used to facilitate the distribution of controlled substances in violation of 21 U.S.C § 841, and is forfeitable to the United States of America pursuant to 21 U.S. C § 853.

Ricky T. Buchanan, Detective
McDowell County Drug Enforcement
McDowell County Sheriff's Office

Sworn to and subscribed to by me this day, the 5th of October 2005.

Dennis L. Howell
United States Magistrate Judge

9